(June 24, 1926.)

FIRST NATIONAL BANK OF POCATELLO, a Corporation, Respondent, v. HUGH POLING, ZETTA POLING, HARLEY POLING, and MARGARET POLING, Appellants.

[248 Pac. 19.]

"ORDER" DEFINED—REPORTER'S NOTES AS MINUTES OF COURT—CLERK'S MINUTES AS EVIDENCE OF PROCEEDINGS—ORAL DECISION WITHOUT RECORD ORDER—PLEDGES—RIGHTS OF HOLDER OF COLLATERAL SECURITY — CHATTEL MORTGAGES — SUMMARY FORECLOSURE — STATUTORY PROCEDURE—HUSBAND AND WIFE—LIABILITY OF WIFE ON NOTE INDEBTEDNESS.

1. An "order" is a decision made during progress of case, either prior or subsequent to final judgment, settling some point collateral to main issue presented by pleadings and necessary to be disposed of.

2. Ordinarily, reporter's notes do not constitute court minutes proper, although they are record of certain proceedings of trial.

3. Minutes kept by clerk, and authenticated by judge, may be looked to as evidence of proceedings of court.

4. C. S., sec. 6560, as amended by Sess. Laws 1925, chap. 111, providing that stenographic record shall constitute minutes of court for use on motions for new trial, review, or appeal, does not refer to final rulings and orders orally announced on collateral issues, and does not affect appealable orders and interlocutory judgments in section 7152, par. 2, under which

appeal from order denying motion to dissolve attachment could only be taken.

5.  Mere oral decision is of no avail for purpose of appeal or error without an order making it of record.

6.  Under C. S., sec. 7164, appeal from order denying motion for new trial under section 7152 will be dismissed, in view of section 7194 defining order, where only record of such order was in reporter's transcript.

7.  In absence of agreement, holder of collateral security or pledge is under no obligation to exhaust or return collateral before suing on principal obligation.

8.  Whether note was delivered to creditor as collateral or for collection to apply proceeds on debt *held* immaterial, in suit on principal obligation, where proceeds were properly applied, and no fraud was shown.

9.  Mortgagee who sells property without strict compliance with statutes relative to summary foreclosure of chattel mortgages cannot thereafter maintain action for deficiency.

10.  Mortgagee obtaining possession of mortgaged property from person in possession, and giving notice under C. S., sec. 6382, and filing return in accordance with section 6384, complied with statute relative to summary foreclosure, enabling him to maintain action for deficiency.

11.  Service of affidavit and notice under C. S., sec. 6380, is not required, where person in possession of mortgaged property was not one of mortgagors; section 6381 requiring service on person in possession only when peaceable possession has not been obtained.

12.  In absence of allegation or proof that debt represented by note was contracted for benefit of separate estate of wife of maker, she was improperly held liable thereon, although execution was admitted.

Publisher's Note.

1.  See 20 R. C. L. 512.

5.  See 2 R. C. L. 129.

7.  See 21 R. C. L. 686.

See Appeal and Error, 4 C. J., sec. 1622, p. 45, n. 64; sec. 1623, p. 46, n. 71.

Chattel Mortgages, 11 C. J., sec. 505, p. 706, n. 70; sec. 524, p. 716, n. 65.

Courts, 15 C. J., sec. 383, p. 972, n. 57; sec. 388, p. 973, n. 86.

Husband and Wife, 30 C. J., sec. 581, p. 889, n. 44.

Orders, 29 Cyc., p. 1514, n. 1.

Pledges, 31 Cyc., p. 868, n. 70, 71; p. 869, n. 72.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. Robert M. Terrell, Judge.

Action on promissory note. Judgment for plaintiff. *Reversed* as to defendant Zetta Poling. *Affirmed* as to defendant Hugh Poling.

F. E. Tydeman, for Appellants.

A mortgagee, who by his own illegal acts disposed of the mortgaged personal property, cannot maintain an action for any balance due on the mortgaged debt. (*Rein v. Callaway,* 7 Ida. 634, 65 Pac. 63.)

The affidavit must be personally served upon the mortgagor and upon the person having possession of the mortgaged property. (C. S., sec. 6381.)

The failure of the mortgagee to have notice served upon the person in possession of the mortgaged property is fatal and prevents the mortgagee who has sold the mortgaged property without such demand from bringing an action for any alleged deficiency. (*Tappin v. McCabe,* 27 Ida. 402. 149 Pac. 460.)

F. M. Bistline, for Respondent.

Appellants have failed to furnish the court with a copy of the order overruling motion to dissolve attachment which is appealed from, or the minutes of the court showing the entry of such order. (C. S., secs. 7164, 7152.)

Where peaceable possession of the mortgaged property is given to the mortgagee, it is not necessary to serve the person in charge of the mortgaged property with affidavit or notice. The giving of peaceable possession is the equivalent to an appearance and a waiver of service. (C. S., sec. 6380.)

ADAIR, District Judge.—This action was originally commenced in the probate court of Bannock county. A writ of attachment was levied upon certain personal property. A

motion to dissolve the attachment was interposed upon various grounds, chief of which was that the affidavit of attachment was false in that plaintiff held a title retaining note signed by one William Cleazie as collateral security, and also held a chattel mortgage which had not been legally foreclosed at the time the affidavit of attachment was executed and the writ issued. An answer was filed by the defendants also alleging that the chattel mortgage executed as security for the note sued upon had never been legally foreclosed and that plaintiff held a title retaining note as collateral security therefor. The action was appealed and tried *de novo* in the district court, and the judge directed a verdict for plaintiff in the sum of $198.25. No order denying the motion for the discharge of the attachment was ever signed by the trial court and no entry was ever made of any action thereon in the court minutes as prepared by the clerk. From the judgment and the purported order refusing to dissolve the attachment, Hugh Poling and Zetta Poling, two of said defendants, appeal to this court.

C. S., sec. 7152, provides that an appeal may be taken from a district court to the supreme court, in certain matters therein specified, one of which is an order dissolving or refusing to dissolve an attachment, such appeal to be taken within sixty days after the order is made and entered on the minutes of the court, or filed with the clerk.

C. S., sec. 7164, is as follows: "On appeal from a judgment rendered on an appeal; or from an order, except an order granting or refusing a new trial, the appellant must furnish the court with a copy of the notice of appeal, of the judgment or order appealed from, and of papers used on the hearing in the court below."

This record contains no reference to any action by the court below on the motion to discharge the attachment, except that the reporter's transcript shows that the judge orally announced after trial on the merits, that this motion was denied. At the time the appeal was perfected the reporter's transcript had not been prepared, settled and allowed, and there was nothing in the record, including

the minutes of the court prepared by the clerk, showing any action whatsoever on this motion.

C. S., sec. 7194, defines an order as "every direction of a court or judge made or entered in writing and not included in a judgment."

This court has held that an order is made when signed by the judge. (*Exchange National Bank v. Northern Idaho Pine Lumber Co.*, 24 Ida. 671, 135 Pac. 747; *Dahlstrom v. Portland Mining Co.*, 12 Ida. 87, 85 Pac. 916.)

[1] Regardless of statute an order has been defined as a decision made during the progress of the case, either prior or subsequent to final judgment, settling some point of practice or some question collateral to the main issue presented by the pleadings and necessary to be disposed of before such issue can be passed upon by the court, or necessary to be determined in carrying into execution the final judgment. (29 Cyc. 1514.)

[2, 3] The record in this case does not show any order made and entered in accordance with the provisions of the statutes, nor within what in the practice is regarded as the minutes of the court. The reporter's notes are the record of certain of the proceedings on the trial of the cause, but do not ordinarily constitute the court minutes proper. At common law, the minutes were merely memoranda from which records were made up after the term, but under modern practice the minutes are kept by the clerk, and usually authenticated by the judge, and may be looked to as evidence of the proceedings of the court. We must look to the entries made by the clerk and consider them as evidence of what occurred in court. To give certainty, authority and verity to the orders of courts of record the minutes showing its proceedings should be prepared and kept by the clerk, for they purport to give the orders, actions and decrees of the court.

In the case of *Spivey v. District Court*, 37 Ida. 774, 219 Pac. 203, it is said:

"There is no statute prescribing just how, or by whom the minutes or journal shall be kept. However, the prac-

tice has been firmly established, and should be recognized, of having the clerk enter in the minutes, or journal a written statement of the action taken by the court. It is to such an entry that the above-mentioned statutes must refer."

[4]  The notes of the official court reporter do not constitute court minutes proper, and an appeal will not ordinarily lie from a ruling or order orally made and found only in the reporter's transcript, under C. S., sec. 7152. While C. S., sec. 6560, as amended by chapter 111, Sess. Laws of 1925, provides that the stenographic record made by the court reporter shall, when properly certified, "constitute *prima facie* the minutes of the court, and may be used on all motions for new trials, review or appeal, when the minutes of the court may be used," this provision is intended to refer to the court's rulings on questions of procedure, the admissibility of evidence, motions to elect, motions for nonsuit or directed verdicts, and kindred subjects directly involved in the trial of the cause, and not to final rulings and orders orally announced on collateral issues not directly affecting the trial itself. This section was not intended by the legislature to obviate the necessity of keeping a record by the clerk, and it does not refer to nor affect the appealable orders and interlocutory judgments specified in paragraph 2 of C. S., sec. 7152, under which only this appeal could be taken.

[5]  There must be a positive and clear record of the action of the court on all motions and proceedings, which can be definitely ascertained from an examination of such record. Had this appeal not been taken, the reporter's notes would not have been transcribed, and there would have been nothing of record from which any person, other than the reporter himself, could determine what action, if any, the court had taken in reference to said motion. Even now, after the appeal has been perfected, the reporter's transcript not being filed in the office of the clerk of the district court, there is no record in that office of any action or decision on the motion to dissolve the attachment.

A mere oral decision is of no avail for the purpose of appeal or error without an order of court making it of record. (3 C. J. 602, sec. 443; *Stewart Mining Co. v. Ontario Mining Co.*, 23 Ida. 724, 132 Pac. 787.) In order that a judgment, order or decree may be reviewed by an appellate court, it must not only be rendered or made but it must also, in most jurisdictions, be entered in permanent form as a record of the court. (3 C. J. 612, sec. 462.)

[6] The appeal in this case, based on the refusal to dissolve the attachment, will be dismissed because no order to that effect has in fact ever been entered.

[7] Appellants urge that they pleaded as a defense, and the evidence tended to establish the fact, that respondent had as collateral security a certain title note signed by one William Cleazie, and that the court erred in directing a verdict in the face of such testimony. This would not be a defense if true. In the absence of an agreement the holder of collateral security, or of a pledge, is under no obligation to exhaust or return the collateral held by him before suing on the principal obligation. (31 Cyc. 868.) [8] The evidence shows that the respondent did have in its possession, delivered to it by one of the defendants after the execution of the note and mortgage, a certain title retaining note and that it did take possession thereunder of certain chattels belonging to the maker, Cleazie, and did sell the same and apply all the proceeds of said sale on the note in question, thus giving the defendants the full benefit of all of such proceeds. There is no issue or proof of fraud in this transaction, and all the evidence shows that the full value of such chattels was applied on the note sued on. Whether this note was taken as collateral, as contended by appellants, or simply delivered to the respondent bank for collection with authority to apply the proceeds on the note of the defendants, as contended by respondent, is wholly immaterial. That was the only issue on which there was any conflict in the testimony adduced at the trial and the court did not err in not submitting that question to the jury.

Appellants assert that the respondent, as mortgagee, did not comply with the requirements of C. S., secs. 6380 and 6381, in foreclosing the chattel mortgage, and is therefore debarred from recovering any further sum in any action against these defendants.

In *Rein v. Callaway,* 7 Ida. 634, 65 Pac. 63, this court held: "A mortgagee, who by his own illegal acts disposed of the mortgaged personal property, cannot maintain an action for any balance due on the mortgage debt."

[9]   The provisions of law relative to the summary foreclosure of chattel mortgages must be strictly followed. If there is a deviation therefrom, and the property is sold by, or through the acts or procurement of the mortgagee, without such compliance with the statutes, he cannot thereafter maintain any action to collect the deficiency.

[10]   After an examination of the return of the person who conducted the sale, and the entire record, we think that the mortgagee or its agent in this instance, did strictly comply with the statutes relative to summary foreclosure.   The mortgagee obtained possession of the mortgaged property from a person then in possession and proceeded to foreclose without invoking the services of an officer.   Notice was given as required by C. S., sec. 6382, and a return of sale was made and filed in accordance with C. S., sec. 6384.   No demand for peaceable possession was made on the mortgagors, who could not be found and were not residing in Power county where the personal property was located and the mortgage was recorded and was being foreclosed.   Service of the affidavit and notice personally on the mortgagors is dispensed with under C. S., sec. 6381, where they cannot be found in the county.

[11]   The person in possession of the mortgaged property was not one of the mortgagors and the affidavit provided for by C. S., sec. 6380, was not served upon him. This was not necessary.   C. S., sec. 6381, which requires personal service of the affidavit upon the mortgagor and the person having possession, such service to be made in the same manner as is provided by law for the service of

a summons, refers only to cases when peaceable possession has not been obtained under the preceding section and has no application to facts such as those of the instant case.   Here the person in possession voluntarily surrendered possession of the property.   Had he failed to do so, then an officer foreclosing would have been required to serve upon him the affidavit prescribed by the statute.

Under C. S., sec. 6380, the legislature did not intend to require that demand be made upon the possessor of mortgaged chattels.   In the contingency that the mortgagor did not surrender peaceable possession after demand, and for the sole purpose of protecting a third person who may have acquired some lien or other interest in and to the mortgaged property, and where such property is being taken by an officer without the peaceable consent of the mortgagor, it is provided in C. S., sec. 6381, that such third person must be notified and served in the manner therein specified.

The mortgagors are not in a position to object to the lack of service on the party in possession, since they are in no manner prejudiced thereby.   The sale was made at public auction to the highest bidder after proper and legal notice, and we conclude that the respondent mortgagee strictly complied with the statutes in its summary foreclosure, and can maintain this action for the deficiency due on the note.   (*Hudson v. Carlson,* 31 Ida. 196, 170 Pac. 100.)

There being no conflict in the evidence upon any material issue, the order directing a verdict for the plaintiff against the appellant and defendant Hugh Poling for the principal sum remaining due on the note, after the allowance of all proper credits, was correctly made.

[12]  It is also urged that the court erred in directing a verdict against the defendant Zetta Poling because she was a married woman, and not shown to be personally liable.   There were no allegations in the complaint as to her marital status.   In her answer she specifically admitted the execution of the note, but did not set up the defense

that she was married and therefore not liable on the debt sued upon. It appears from the evidence, however, and particularly in the exhibit constituting the return of sale after the summary foreclosure, that appellant Zetta Poling was the wife of the appellant Hugh Poling. There being no allegation in the complaint and no proof adduced at the trial tending to show that the debt represented by the note and mortgage was contracted for the benefit of her separate estate, the court erred in directing a verdict against said Zetta Poling.

The cause is remanded with directions to vacate the judgment, dismiss the action as to the defendant Zetta Poling and to enter judgment against the defendant, Hugh Poling. As so modified the judgment will be affirmed, with costs to respondent.

William A. Lee, C. J., and Wm. E. Lee, Givens and Taylor, JJ., concur.