**Robert Lee PROFFER and Hollis Leon Adkison, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 18463.**

United States Court of Appeals
Fifth Circuit.

March 16, 1961.

Rehearings Denied April 26, 1961.

George E. Cochran, Irvin W. Shelman, Fort Worth, Tex., for appellants.

William L. Hughes, Jr., U. S. Atty., W. B. West, III, Asst. U. S. Atty., Fort Worth, Tex., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from the judgment and sentencing of the appellants on a

jury verdict of guilty in a mail fraud and a Securities Act Section 17(a) indictment.[1] The two parties base their appeals on different grounds. Proffer principally contends that there was insufficient evidence connecting him with the activities of his co-defendants, who, other than Adkison, pleaded guilty, to support a verdict against him. Adkison contends primarily that he was denied the effective aid of counsel on the trial, and that therefore the conviction cannot stand on constitutional grounds, Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461.

■ We have carefully read the record references called to our attention by the parties, and we think it is plain that the evidence would amply permit a jury reasonably to find the defendants guilty beyond a reasonable doubt. See Riggs v. U. S., 5 Cir., 280 F.2d 949, 953.

The scheme to defraud charged in the indictment involved the setting up of a corporation called, "Teachers Professional Investment Company", purportedly to make loans to the members of the teaching profession in Texas. The indictment charged the appellants together with others, with selling stock in this corporation, and subsequently selling scholarships in "Professional Business University, Inc.," by false and fraudulent misrepresentations. Use of the mails was charged.

It is not disputed that many false representations were made in the sale of stock to the teachers and others who entrusted their money to appellant Proffer and his associates, nor is it disputed that Proffer actively engaged in the sale of the stock at a time that prospectuses and other literature contained materially false representations. Finally, it is conceded that as a result of his sales efforts, Proffer received over $6,000.00 in commissions and he also received a substantial sum in connection with an automobile transaction which this jury could find highly suspect.

The burden of Proffer's argument is that he was really the duped and not the defrauder. He says that he relied in good faith on the statements and promises of his colleagues and that there was no evidence to show that he was not really taken in by them.

This argument misses the basic point that, for whatever reason, he nevertheless did hold himself out as president of the company; he knew that he was needed as a well-known teacher to attract others of his profession; he permitted his reputation to be used by letting his corporate colleagues elect him president although he says he had none of the duties or privileges of a corporation president. This leaves him on the horns of a dilemma. Either he was president, and thus the jury could find him responsible for at least some of the numerous false representations or his intentionally holding himself out as president to further the sales of stock when he was in fact only a figurehead the jury could find amounted to a false representation. In his brief here, Proffer takes the second position. He says:

"Appellant Proffer's functioning as president would necessarily be false since the evidence showed that he was in realty a stock salesman. This was the agreement between appellant, Proffer, and those that selected him. Actions and testimony throughout the trial proved this."

There was sufficient evidence of his presiding at directors' and stockholders' meetings to have permitted the jury to reject this contention. However, if the jury had been bound to accept this proposition, then what Proffer is now saying is that he agreed to permit his name to be used in a dishonest manner in order to attract his teacher friends when in point of fact he was nothing but a salesman

1. "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails directly or indirectly—(1) to employ any device, scheme, or artifice to defraud * * *" 15 U.S.C.A. § 77q(a).

In effect he says that he and his corporate colleagues agreed that he should say to his fellow teachers, "I am the president of this corporation and I will be in control of its affairs," whereas, such was not the truth at all. We think it clear that the jury could find on this action alone that stock sales made on this representation were the result of a scheme to defraud.

There was much more, however, to show appellant Proffer's identification with the carrying on of sales based on false statements, such as the financial condition of the company, the number of shares outstanding, the number of shares he personally owned, and the connection with the enterprise in official capacities of persons who had not been consulted.

Appellant makes a strong argument to the effect that it was highly unlikely that he would throw away his good reputation and damage his personal friends and colleagues in the teaching profession by wilfully misstating the facts in order to make sales to them. The jury heard the testimony bearing on the good faith of the appellant in all that he did. As stated by the Court of Appeals for the Second Circuit in Linn v. United States, 234 F. 543, 552:

"While men may not be convicted for acts done in good faith, nevertheless schemes and devices to induce the making of stock investments which plainly would not otherwise be made, by the knowingly false representation of material facts and conditions, show a culpability which enthusiasm cannot justify or optimism excuse."

We conclude that there was ample evidence to support the jury's verdict as to Proffer.

No real contention is made here that there was not sufficient evidence to support a guilty verdict as to Adkison. His appeal is based primarily on the contention that he was not tendered the aid of counsel, and that he did not waive the right to counsel.

This contention presents somewhat of a novel question under the circumstances. The accused who makes it is himself a lawyer and the record of proceedings below are silent as to whether appellant was unable to afford counsel for his own defense and whether, if not, he was without knowledge, in spite of being a lawyer, of his right to have counsel assigned to him.

The government does not contest the point that an accused is entitled to counsel and that it is the court's duty to appoint a lawyer to aid him in his defense if he is unable to employ counsel and has not knowingly waived the right, Johnson v. Zerbst, supra, nor does the government contend that the mere fact that an accused is a lawyer deprives him of his right to have counsel appointed to aid him. The government does contend, however, that when a lawyer goes to trial without asking for appointment of counsel for himself, the trial court has the right to assume that he has waived any right he may have and under such circumstances it is not error for the trial to proceed without an express tender of counsel by the court.

In considering this point we must bear in mind that neither by motion for new trial, by affidavit filed here, or in brief of counsel is it asserted that Adkison was without funds to hire a lawyer or, if he was, that he did not know of his right to have counsel appointed for him. Such a right exists under the Texas statutes under which appellant was licensed to practice law. Such right exists under the Constitution of the United States, Amend. 6, as construed in the decisions of the Supreme Court and as amplified by Rule 44 F.R.Crim.P., 18 U.S.C.A. All that is said here on appellant's behalf is that he was not *advised* of his right to have counsel appointed by the trial court.

 The legal principles here for application are not in dispute. Beginning with Johnson v. Zerbst, supra, the Supreme Court has adhered to these propositions: (1) the Constitution requires that every accused in a Federal criminal trial has the right to counsel;

(2) if he is unable financially to provide for a lawyer, the court has the duty to tender counsel to him; (3) an accused may waive the assistance of counsel if he does so "competently and intelligently"; (4) the fact of waiver must depend upon the particular facts and circumstances, including the background, experience and conduct of the accused.

■ In a case in which a lawyer was involved, Glasser v. U. S., 315 U.S. 60, 62 S.Ct. 457, 465, 86 L.Ed. 680, the Supreme Court said:

"The fact that Glasser is an attorney is, of course, immaterial to a consideration of his right to the protection of the Sixth Amendment. His professional experience may be a factor for determining whether he actually waived his assistance to counsel, Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461]. But it is by no means conclusive."

In the Glasser case the question was whether the accused had waived an objection he had made in open court to having counsel employed by him assigned by the court to represent a co-defendant in a case in which it appeared that there was a clear conflict of interests. The Supreme Court held that the mere fact that Glasser proceeded with the trial without renewing his objection did not amount to a waiver. Here, the question goes merely to whether the trial court could properly assume that Adkison knew of his constitutional rights, in light of his professional qualifications, and thus was not required to take the affirmative in notifying him of the law before it had the right to assume that he had waived the right by proceeding to defend himself.

We find here ourselves in agreement with the Court of Appeals for the Ninth Circuit when it said:

"To inform (the defendant) of the existence of a right which he knew and had intelligently waived would have been a useless act. Its performance was not required by the constitution. Its omission did not deprive the court of jurisdiction." O'Keith v. Johnston, 9 Cir., 129 F.2d 889, 891, certiorari denied 317 U.S. 680, 63 S.Ct. 161, 87 L.Ed. 546.

Of course, in order for this language to be apposite, we must assume that Adkison knew of his constitutional right. This we think we should do, because he was a lawyer and because on the record before us he has not even denied that he had such knowledge.

The very cases in which the Supreme Court finds it a constitutional violation to deprive an accused of the right to counsel make evident the great importance that is attached to the legal knowledge and skill of a lawyer. When we are called upon to inquire into a post-conviction charge that an accused has been deprived of the effective aid of counsel, we rarely ever inquire into the skill or ability or degree of learning of a lawyer if it appears that the accused was actually represented by counsel. See Floyd v. United States, 5 Cir., 260 F.2d 910, 912; Kennedy v. United States, 5 Cir., 259 F.2d 883. Necessarily, unless the most extraordinary circumstances are shown, the courts charge the defendant with the actions of his counsel. See Thomas v. United States, 5 Cir., 287 F.2d 527. Since we would hold an accused to be bound by Adkison's actions and judgment as a lawyer if he had been appointed or chosen to represent a defendant, we think it not too much to assume, as the trial court here did, that Adkison knew the rights of a criminal defendant under the Constitution. Thus, it would not be error for the trial court to assume that if Adkison did not ask for the appointment of counsel it was either because he could actually afford to employ a lawyer and chose not to do so, or if unable to employ counsel, he elected to waive the right to have counsel assigned.

■ We have considered the other grounds of error as assigned by appellant Adkison and find them to be without substance. Moreover, no effort was made by Adkison to call any of these alleged errors to the attention of the trial court as provided under the rules. Having

waived the assistance of counsel, he may not escape the effects of his own failure to comply with the plain rules by reason of that fact. See, in this connection, Smith v. United States, 5 Cir., 216 F.2d 724.

The judgment is affirmed.