Walter R. **HARTMAN**

v.

**UNITED STATES of America.**

**Civ. A. No. 647(H).**

United States District Court
W. D. Virginia,
at Roanoke.

March 10, 1964.

John L. Walker, Jr., Woods, Rogers, Muse & Walker, Roanoke, Va., for petitioner.

Lawrence C. Musgrove, Asst. U. S. Atty., Roanoke, Va., for respondent.

MICHIE, District Judge.

On May 4, 1954 Walter R. Hartman entered a plea of guilty to a charge of breaking and entering a U. S. Post Office at Rocky Mount, Virginia, in violation of 18 U.S.C.A. § 2115. Pursuant to that plea he was sentenced to five

years imprisonment, the maximum allowed for the offense.

On October 6, 1962 Hartman filed a motion to set aside and vacate the judgment pursuant to 28 U.S.C.A. § 2255. Since the petitioner was then serving a state sentence and would only begin to serve the § 2115 federal sentence sometime in the future, the court found that the custody requirement of 28 U.S.C.A. § 2255 was not met but treated the petition as one in the nature of *coram nobis*. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Williams v. United States, 10 Cir., 267 F.2d 559 (1959).

The petition itself was handwritten and prepared without the aid of counsel. The court felt that its allegations were serious enough to accord the indigent petitioner a hearing and therefore appointed Mr. John L. Walker of Roanoke to represent him. After talking to the petitioner Mr. Walker filed an Amended Petition in the Nature of Coram Nobis in which it was alleged that the petitioner, although he had waived his right to counsel in open court, was, in fact, never advised of his right to have counsel appointed for him without cost if he

could not afford to employ an attorney of his own choosing and that he was never apprised of the nature of the charge against him, the defenses available thereto, possible mitigating circumstances, the maximum sentence which could be imposed nor the other possible consequences of a conviction of the crime for which he was charged.[1]

At the hearing in this matter held in Roanoke on September 24, 1963 it became apparent that the petitioner relied most heavily on the failure of the trial court or anyone else to inform him of his right to have counsel appointed for him at no cost if he could not afford to hire one. (See, for example, pp. 29 & 31 of hearing transcript.) The fact that he had not been apprised of the maximum sentence which could be imposed on him was also relied on, but petitioner related the importance of this omission to the absence of an attorney as well.[2]

In addition, counsel for petitioner argued in a brief filed after the hearing that, while no physical or mental coercion was used upon him, his plea of guilty was not made intelligently and understandingly because he was not fully apprised of the nature of the offense of

---

1. The transcript of the trial proceedings up to the taking of the guilty plea reads as follows:

"MR. WILSON: You are Walter R. Hartman?

"DEFENDANT WALTER R. HARTMAN: That's right.

"MR. WILSON: And you are Emma Louise Hartman?

"DEFENDANT EMMA LOUISE HARTMAN: Yes.

"MR. WILSON: You have been indicted, both of you, for breaking and entering the Post Office Building at Rocky Mount on or about December 20, 1953. Do you have a lawyer?

"DEFENDANT WALTER R. HARTMAN: No, sir.

"DEFENDANT EMMA LOUISE HARTMAN: No, sir.

"MR. WILSON: Do you want the Court to appoint a lawyer for you?

"DEFENDANT WALTER R. HARTMAN: No, sir.

"DEFENDANT EMMA LOUISE HARTMAN: No, sir.

"MR. WILSON: How about you?

"DEFENDANT EMMA LOUISE HARTMAN: No.

"MR. WILSON: How do you plead, guilty or not guilty?

"DEFENDANT EMMA LOUISE HARTMAN: Guilty.

"MR. WILSON: Both guilty?

"DEFENDANT WALTER R. HARTMAN: That's right."

2. "Q Did anyone connected with the government ever mislead you in any way as to what kind of sentence you might get in the federal court?

"A No sir.

"Q Would the fact that five years was the maximum punishment for breaking and entering the United States Post Office have any effect on your plea of guilty or not guilty to this particular offense?

"A If I had had a lawyer I would have talked it over with him. I would have done what he said do.

"Q Then your only complaint still is the fact that you were not appointed a lawyer is that right?

"A Yes sir."

which he was charged the defenses to the crime, or any mitigating factors which might have been relevant to his case. I will take these charges up in order.

■■ 1) *Allegation that petitioner was never advised of his right to have counsel appointed at no cost to himself:* As the Court of Appeals for the Fourth Circuit said in Miller v. United States, 4 Cir., 261 F.2d 546, 547 (1958), "[a]n essential part of appellant's burden of proof here is to show not only that he was not told of his right to counsel, but that he did not know of such right." Although Hartman testified repeatedly that he was not informed of his right to have counsel appointed and that he did not know of such right, his testimony with respect to his lack of knowledge of the right is simply incredible to this Court. For cross-examination of Hartman brought out that he had been arrested and tried for felonies on numerous occasions prior to May 4, 1954 and that at several of these trials, including one in the U. S. District Court for the Western District of Virginia, he had been represented by counsel appointed by the Court at no cost to himself.[3] When asked about these trials, he repeatedly claimed that he never asked for counsel to be appointed for him because he did not know of his right to have free counsel. His story was that counsel simply appeared in a mysterious fashion which he was never able to comprehend. One such explanation reads as follows:

"Q And on November 25, 1949 you were tried again for house breaking is that right?

"A Yes sir.

"THE COURT: 19 what?

"A 1949.

"Q Did you enter a plea of guilty or not guilty at that time?

"A Guilty.

"Q Did you have an attorney appointed for you?

"A Yes sir.

"Q Then you knew you had a right to an attorney then did you not?

"A Well I didn't know whether I had a right to him or not they sent him up to the jail to talk to me so I accepted him.

"Q You mean all of these times that you had an attorney they never asked you whether you wanted one— they just sent one in to talk to you?

"A Yes sir.

"Q They never asked you before hand but just sent an attorney there to talk to you?

"A That's right." Hearing Transcript p. 25

This Court finds such an explanation incredible. Hartman's statement that he had counsel supplied to him on five separate occasions without any request being made on his part or any knowledge on his part of his right to have counsel appointed strains his credibility in the eyes of this Court far beyond the breaking point. And I therefore find as a fact that Hartman did know that he was entitled to have counsel appointed for him at no cost to himself when he waived that right and that he therefore is en-

3. The following is a list of Hartman's previous trials as he testified to them at the hearing:

a) July 21, 1941; State Court; breaking and entering.

b) October 11, 1942; State Court; breaking and entering.

c) June 5, 1944; U. S. District Court for the Western District of Virginia; theft from the U. S. mails; REPRESENTED BY COURT APPOINTED COUNSEL.

d) February 23, 1946; State Court; breaking and entering.

e) November 25, 1949; State Court; housebreaking; REPRESENTED BY COURT APPOINTED COUNSEL.

f) February 9, 1950; State Court; store breaking. REPRESENTED BY COURT APPOINTED COUNSEL.

g) March 19, 1954; State Court; armed robbery; REPRESENTED BY COURT APPOINTED COUNSEL.

h) March 26, 1954; State Court; thirteen counts of breaking and entering; REPRESENTED BY COURT APPOINTED COUNSEL.

titled to no relief based on the trial court's failure to expressly inform him of the right. Miller v. United States, supra.

■ 2) *Allegation that petitioner was not apprised of the maximum sentence he might receive:* As has already been shown Hartman was no stranger in the courts. He had spent most of his life in the penitentiary after convictions for crimes very similar to the one he was charged with in this case. He therefore knew that the charges against him were of a serious nature and it is not unreasonable to assume that he knew he might get as much as five years in prison upon conviction.

Furthermore, after entering his plea but prior to sentencing the following colloquy took place between the Court, the U. S. Attorney and Hartman:

"THE COURT: What are the penalties in this case? Do you have the statute here?

"MR. WILSON: It is $1,000 and five years, Your Honor, $1,000 fine and/or five years in the penitentiary.

"THE COURT: Are you sure that five years is the limit?

"MR. WILSON: They are charged with breaking and entering. Do you want to see the statute?

"THE COURT: Yes.

"MR. WILSON: (handed Court.)

"THE COURT: Mr. Hartman, have you anything to say about this, or anything in your own defense that you can offer?

"DEFENDANT WALTER R. HARTMAN: No, sir. I have twenty years in the state already to pull." Trial Transcript p. 6

In Aiken v. United States, 296 F.2d 604 (4th Cir. 1961) a similar allegation was disposed of under similar circumstances at 607:

"After imposition of the twelve year sentence, Aiken made the following statement, 'Your Honor, due to the fact that I have three and a half years in addition to this [to serve], I don't want you to think I am imposing on the Court, but would you consider cutting that two years and making mine ten and that will give me almost fourteen years?' Patently, this is not the declaration of a man who had been misled into a plea on assurances that he would receive only a five year sentence.

"At the time of trial Aiken was 43 years old, possessed superior intelligence and extensive prior criminal experience. He had been furnished with a copy of the charges against him at least two weeks before the trial, and he readily admitted at the hearing now under review that he fully understood the nature of the charges. We think the District Court correctly determined that Aiken intelligently and competently waived his right to counsel. We have on several occasions admonished district courts in this circuit to observe Rule 11 which commands that they 'shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.' We strongly counsel strict adherence to the rule. Thereby the necessity for subsequent hearings under section 2255 may often be obviated. But where such a hearing establishes beyond doubt the understanding and the voluntariness of the plea and waiver of counsel, the judgment of the court will not be set aside."

Accordingly, I find that Hartman was not misled or prejudiced by the Court's failure to tell him of the five year maximum sentence prior to accepting his plea, although I must acknowledge that much time and trouble would certainly have been avoided in this case if such a precaution had been taken.

Counsel for petitioner has argued in his brief a number of other elements relating to the voluntariness of Hartman's guilty plea and waiver of counsel. He also argues that manifest injustice with-

in the meaning of Rule 32(d) of the Federal Rules of Criminal Procedure has occurred in the Court's treatment of Hartman. However, Hartman freely admitted his guilt at the hearing held in this case. (See p. 17 of Hearing Transcript.) And it appears conclusively that no prejudice to Hartman resulted from his trial. See Turner v. Maryland, 318 F.2d 852 (4th Cir. 1963). I therefore hold that the petition must be denied.