428 P.2d 505

**Ronald Roma ABERCROMBIE, Plaintiff-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

**No. 9817.**

Supreme Court of Idaho.

May 31, 1967.

McQUADE, Justice.

Appellant, Ronald Roma Abercrombie, whose complete education consists of intermittent attendance at public schools for three or four years and completion of the eighth grade in prison, has spent some twenty of his thirty-five years in different jails. On April 15, 1962, while serving a sixty day sentence in the Nez Perce County jail for petit larceny (shoplifting), he participated in a disturbance during which he admittedly tore up his mattress and engaged in "yelling and singing and cussing."

Owen Knowlton, then Nez Perce County prosecuting attorney, testified at the habeas corpus hearing that he visited appellant on the day after the alleged felony had been committed, and two or three times afterwards. On the first visit, he testified, he "told Mr. Abercrombie [appellant] that when he got into district court, an attorney could be appointed."

On May 3, 1962, appellant appeared without counsel in Nez Perce County justice court, and was charged with the violation of injuring a jail, I.C. § 18–7018.[1] Appellant's name, the date of the offense, stated to be a felony, and the following clause comprise the only factual matter in the charging provision of the criminal complaint: "Who then and there being, did then and there willfully, intentionally, knowingly, unlawfully and feloniously injure a public jail, to-wit: Nez Perce County Jail in the Courthouse, Lewiston, Idaho." Justice of the Peace John H. Maynard presided at this arraignment. It was his practice, he testified at the hearing below, to tell the defendant that he "was not going to be found guilty or not guilty in the justice court, but a determination was to be made of whether or not he should answer to the charge in the district court." He would then state "that in the district court he [a defendant] would be entitled to be represented by counsel, and in that court

Madden, Randall, Bengtson & Peterson, Lewiston, for appellant.

Allan G. Shepard, Atty. Gen., and William D. Collins, Asst. Atty. Gen., Boise, for respondent.

1. I.C. "18–7018. *Injuring jails.*—Every person who wilfully and intentionally breaks down, pulls down or otherwise destroys or injures any public jail or other place of confinement, is punishable by fine not exceeding $10,000, and by imprisonment in the state prison not exceeding five years."

if he had no funds and he desired counsel, one would be provided for him, that this was not the case in the justice court." However, Justice Maynard could not recall having so "advised this particular defendant [appellant]." He also testified that since appellant appeared before him on May 3, 1962, he has altered his method of advising an indigent defendant regarding appointment of court compensated counsel. In light of recent United States Supreme Court decisions and state legislation providing that counsel may now be appointed to defend the indigent accused in the justice court, Justice Maynard now tells defendants that "if they do not have funds or credit and wish an attorney" one will be appointed, and he carefully assesses their reactions to this advice. If an indigent accused "even hints" that he so desires, counsel is provided. Appellant testified that Judge Maynard did not inform him that if he reached district court he would have the right to a court compensated attorney. At the end of this proceeding he advised the judge that he would defend himself in justice court, and refused to waive preliminary examination.

On the habeas corpus hearing appellant testified twice, and his testimony was uncontradicted, that after the preliminary examination, during the afternoon of the same day, he conferred, at his request, with a Lewiston attorney. In the sheriff's office in the Nez Perce County jail, he and the attorney discussed the charge against him. The attorney advised him, appellant testified, that legal services would cost fifty dollars in the justice court, and two hundred dollars if appellant had to appear in the district court. Seeking to hire the attorney, appellant testified, he then made a fruitless telephone call to raise money for this purpose, and for this reason was prevented from obtaining the services of counsel. The next day, May 4, 1962, appellant waived his preliminary examination before the justice court. On the habeas corpus proceeding below, the court made no finding regarding the occurrence of either the conference or the telephone call. The judge refused to amend his findings, upon appellant's motion, by adding a statement that these events had happened.

On May 15, 1962, appellant wrote a letter to an aunt and uncle in California, which he never mailed. In part it stated, "I don't have to go to Boise, but I will so that maybe Calif. will not take me back. I want to stay in Idaho if I can. And it is like I told you, if I go back to Folsom I will never get out again. So I am taking this chance. It may not do any good. I might still have to go back. I just don't know yet." From the testimony of appellant and prosecuting attorney Knowlton, it appears that Knowlton had informed appellant that California authorities were instituting extradition proceedings for some offense which appellant had committed there. Knowlton testified that appellant was in mortal fear of returning to Folsom prison where inmates blamed him for the death of several convicts. Appellant testified that he had indicated to Knowlton that he preferred to be sent to Boise rather than California, but denied fear of any danger there.

On May 25, 1962, appellant, still without counsel, was brought before the Nez Perce County District Court, Judge John W. Cramer presiding. The charging clause of the information presented to the court and to appellant was identical to the criminal complaint charge set forth above. The complete district court arraignment proceedings took four minutes. The proceedings, with the brief sentencing portion omitted, were as follows:

"BE IT REMEMBERED that on the 25th day of May, 1962, at the hour of 10:10 o'clock a. m., the above-entitled cause came on regularly for hearing before the Honorable John W. Cramer, sitting without a jury, in the District Courtroom of the Nez Perce County Courthouse, Lewiston, Idaho.

"Mr. Owen L. Knowlton, prosecuting attorney of Nez Perce County, appeared for and on behalf of the plaintiff.

"The defendant, Ronald Roma Abercrombie, was present in the court and without counsel.

"The following proceedings were had:

"THE COURT: The defendant will stand up. You have been charged with the crime of Injuring a Jail under the name of Ronald Roma Abercrombie. Is that your true name?

"MR. ABERCROMBIE: Yes, Sir.

"THE COURT: Do you have an attorney?

"MR. ABERCROMBIE: No.

"THE COURT: Do you want an attorney?

"MR. ABERCROMBIE: No.

"THE COURT: Do you understand your rights to have an attorney if you want one?

"MR. ABERCROMBIE: (nodded affirmatively).

"THE COURT: Okay. You will listen to the reading of the Information.

"(WHEREUPON THE INFORMATION WAS READ TO THE DEFENDANT BY THE CLERK)

"THE COURT: To this information what is your plea, guilty or not guilty?

"MR. ABERCROMBIE: Guilty.

\* \* \* \* \* \*

"(COURT IN RECESS AT 10:14 O'CLOCK A.M.)"

Upon his conviction, appellant was sentenced to a maximum term of five years in the state penitentiary. On July 28, 1965, he filed a petition for a habeas corpus writ with the district court of Ada County, and on August 3, 1965, the writ issued. On August 23, 1965, at the end of a hearing held on the writ, the judge granted a continuance in order to procure the court minutes and records of appellant's conviction. The cause was transferred to the Nez Perce County District Court, counsel appointed by that court, and a hearing held before Judge Paul W. Hyatt on October 11, 1965. At the end of the hearing, the judge ordered the writ quashed and dis-missed and appellant remanded to the state penitentiary. This is an appeal from that order.

Even before Idaho had been admitted to the Union our legislators enacted legislation relating to the right to counsel:

"If the defendant appears for arraignment without counsel he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel the court must assign counsel to defend him." I.C. § 19–1512. (First enacted in 1887; R.S. 1887, § 7721).

The policy embodied in this statute predated by half a century the United States Supreme Court's pronouncement of the similar federal rule in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). In Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), the United States Supreme Court refused to extend the federal rule to the states via the Fourteenth Amendment, and Idaho was cited as one of eighteen states affording counsel to an indigent accused of a crime. This statute was enacted seventy-six years before the United States Supreme Court overruled Betts v. Brady, supra, and declared in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R. 2d 733 (1963):

"The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." 372 U.S. at 344, 83 S.Ct. at 796.

"We accept Betts v. Brady's assumption, based as it was on our prior cases, that a provision of the *Bill of Rights* which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment. We think the Court in *Betts* was wrong, however, in concluding that the Sixth Amendment's guarantee of counsel is not one of these fundamental rights." (Italics in original), 372 U.S. at 342, 83 S.Ct. at 795.

"From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." 372 U.S. at 344, 83 S.Ct. at 796.

This court has had occasion to construe Idaho's right to counsel statute, State v. Montroy, 37 Idaho 684, 217 P. 611 (1923):

"It is the public policy of this state, disclosed by constitutional guaranties as well as by numerous provisions of the statutes, to accord to every person accused of crime, not only a fair and impartial trial, but ever reasonable opportunity to prepare his defense and to vindicate his innocence upon a trial. In the case of indigent persons accused of crime the court must assign counsel to the defense at public expense". 37 Idaho at 690, 217 P. at 614.

In State v. Lawrence, 70 Idaho 422, 220 P.2d 380 (1950), the trial court minutes showed "appellants advised by Court of their right to counsel; that each stated he did not want an attorney". The district judge who presided at the trial testified, at a hearing on appellant's motion to withdraw their pleas of guilty, that first he had fully advised the four defendants of their rights to counsel at the opening of their arraignment; later in the proceedings after explaining the crime and stating that it was a serious matter, he had asked again if they wanted counsel and they had conferred among themselves and had stated that they did not. "I then questioned each one of them individually as to whether or not they wanted counsel and again they conferred and stated that they did not. * * * I told them * * * that if they didn't want an attorney, certainly I was not going to employ one for them * * *." 70 Idaho at 425, 220 P.2d at 381. This court noted:

"No other, further or independent inquiries or investigations were made as to appellants' background or circumstances of the case or antecedent conditions. * * * the record does not disclose, and appellants and their affidavits affirmatively state, they were not advised as to their rights underlying and preceding plea and, perforce, preceding sentence. True, all persons are presumed to know the law, but we cannot disregard the idea contained in Section 19–1512, I.C., i. e., that a defendant charged with a felony has a right to counsel if he wishes, which presupposes counsel may aid with his superior knowledge of the intricacies of substantive law and procedure. * * * *"

" * * * The record leaves us more than in doubt as to whether appellants understood the consequences of pleading guilty in connection with their declination of a lawyer, because not fully and advisedly understanding what the services of a counsel might avail them. The matter of sentence is one thing; protection and assertion of legal rights leading up to sentence, another; and the latter are as, if not more, important and vital than the former." 70 Idaho at 425–426, 220 P.2d at 381.

Cobas v. Clapp, 79 Idaho 419, 319 P.2d 475 (1957), decided before Gideon v. Wainwright, supra, contains two factual elements not presented in the instant case. First, after waiving his preliminary examination and being bound over to the district judge, Cobas wrote and signed a statement that "he knew he was entitled to the services of an attorney, [and] that 'I do not want an attorney.'" 79 Idaho at 424, 319 P.2d at 477. Secondly, the district judge asked Cobas, "Have you made any effort to obtain an attorney?" Ibid. If the district judge in the instant case had so inquired, appellant's proper response, if his uncontradicted testimony be true, would have been "Yes." This could have laid the foundation for a colloquy which would probably have developed that appellant wanted an attor-

ney but could not afford one. However, even noting the distinguishing factual elements, it is at best doubtful that the result in Cobas v. Clapp, supra, would be the same if the case had been decided after Gideon v. Wainwright, supra. See Doughty v. Maxwell, 372 U.S. 781, 83 S.Ct. 1106, 10 L.Ed.2d 139 (1963), 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964).

In State v. Thurlow, 85 Idaho 96, 375 P.2d 996 (1962), an arraignment almost identical to that in the instant case was held to be a violation of the constitutional right to due process:

"Although the trial judge did ask the defendant if he had an attorney and secondly if he wanted an attorney the requirements of I.C. § 19–1512 were not otherwise complied with." 85 Idaho at 102, 375 P.2d at 999.

"It is incumbent upon the court, upon an arraignment for an offense such as is here involved [a felony], to ascertain if a defendant is financially capable of hiring counsel and to advise the defendant in order that he may intelligently respond to the court's interrogation on this subject. Unless informed of these statutory rights it is conceivable that defendant would not know of their existence and his inability to employ counsel would operate to deny him the opportunity to assert defenses to the charge in violation

of his right of due process." 85 Idaho at 103, 375 P.2d at 1000.

Respondent contends that the arraignment proceedings in the instant case are distinguishable from those in Thurlow "in one important aspect." The point of distinction urged by respondent is that while the trial judge here, as in Thurlow, asked the accused whether he had or wanted an attorney, in the instant case the judge further inquired, "Do you understand your rights to have an attorney if you want one?" Considered in light of the trial judge's statutory duty to "inform" a defendant of his right to counsel, Idaho Const. art. I, § 13, as implemented by I.C. § 19–1512, this variance between the arraignment in Thurlow and that in the instant case is a distinction without a difference. The statutory policy of I.C. § 19–1512 presupposes that an accused will probably not fully understand the scope of his right to counsel, thereby imposing upon the judge a positive duty adequately to advise an accused of his right to counsel. This statutory duty cannot be satisfied by a judge's abstract question: "Do you understand your rights * * *?" Cf. State v. Poglianich, 43 Idaho 409, 252 P. 177 (1927), where the defendant testified regarding his court appointed counsel, "knowing that the state had something to do about his appointment, [he] felt that he [the attorney] was against him;" 43 Idaho at 414, 252 P. at 178;[2] State v. Lawrence,

2. See Silverstein, Defense of the Poor in Criminal Cases in American State Courts, (American Bar Foundation 1965). A survey of 300 counties, from all the states and the District of Columbia, disclosed that the following procedure for offering counsel at arraignment is employed in approximately 100 of the 300 counties:

"When counsel is offered, the court undertakes to explain such things as the significance of the arraignment, the maximum sentence, and the fact that counsel will be provided at no cost to [him] the defendant. Of these three items, the most commonly mentioned to the defendant is that counsel will be provided at no cost to him. * * *

"In about 110 counties the court urges the defendant to accept appointment of counsel or appoints counsel without even asking the defendant whether he wants one. This is sometimes done in addition to imparting some or all of the information mentioned above." Id. at 90–91.

The study questions the constitutionality of a procedure followed in the remainder of 50 counties (40 counties were not reported due to unclear records) whereby "the judge asks the defendant whether he wants to have counsel appointed to represent him but says nothing more beyond asking questions to determine indigency. * * * [T]he indigent defendant may assume that he must pay for counsel and say 'No' because he has no funds or does not want to impose on his family." The study notes the practice, reported in a law review article, of a judge who asks the defendant, "What

supra. But cf. Jackson v. State, 87 Idaho 267, 392 P.2d 695 (1964). Note that in Jackson, however, this court's opinion referred to a conversation between the trial judge and the defendant which occurred in the absence of the court reporter, and so was not transcribed verbatim. The Jackson case stressed that during this discussion, the ultimate conclusions of which were recorded in the trial court's minutes, the defendant "informed the Court that he did not desire the Court to appoint him counsel." 87 Idaho at 274, 392 P.2d at 699. This court said "[t]he minute entry and order * * * is sufficient to show that he [defendant] was informed that the court would appoint counsel if he were unable to employ one himself. Else, what reason would appellant have to inform the court that he did not desire the court to appoint counsel if he had not been advised that the court would do so if he did so desire?" 87 Idaho at 280, 392 P.2d at 703.

■ *Lawrence, Poglianich,* and *Thurlow* cases, all direct appeals from district court judgments and denials of motions to vacate guilty pleas, are procedurally distinguishable from the instant habeas corpus proceeding. However, these cases unmistakably emphasize this court's jealously protective attitude of the "Safeguards by constitutional provisions and statutory enactments [which] are placed about a defendant to be accorded him by prosecuting officers and courts, and [of which] the defendant cannot be deprived * * * with impunity." Poglianich, supra, 43 Idaho at 424, 252 P. at 181. The record herein discloses that the district court failed to fulfill the requirements of I.C. § 19–1512 at appellant's arraignment. That court's procedure at appellant's conviction and sentencing constituted a sufficiently serious deprivation of appellant's fundamental

rights to require that the judgment of conviction be vacated. This eighty-year-old statute, regulating arraignment procedure to assure protection of a felony defendant's "most pervasive right," [3] the assistance of counsel, cannot be construed as mere procedure within the rule that procedural defects are not subject to habeas corpus review. See I.C. § 19–4201; I.C. § 19–4212, which provides that at a hearing on return of a writ of habeas corpus, "The court or judge must thereupon proceed, in a summary way, to hear such proof as may be produced * * * and to dispose of such party as the justice of the case may require * * *"; Johnson v. State, 85 Idaho 123, 376 P.2d 704 (1962); cf. Idaho Const. art. I § 5; Mahaffey v. State, 87 Idaho 228, 392 P.2d 279 (1964); see also Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), ("procedural" errors in state criminal proceeding sufficiently grave to require federal habeas corpus).

However, even if the laws of Idaho did not require granting the relief sought by appellant, the Sixth and Fourteenth Amendments to the federal constitution would constrain this result.

■ Prior to 1963, the United States Supreme Court adhered to the rule that in state criminal proceedings, the Fourteenth Amendment's due process clause controlled the question of deprivation of constitutionally guaranteed right to counsel. Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1959); Betts v. Brady, supra; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932). In Gideon v. Wainwright, supra, the United States Supreme Court declared that the Sixth Amendment of the United States Constitution guaranteeing an accused's right to counsel in all felony cases is applicable to the states.

---

do I mean when I say 'right to counsel'? "The judge reports that he often receives an answer that indicates that the defendant does not really understand what is involved." The study then states, "[T]he reporter from Idaho told of a prisoner

who had waived 'counsel' because he did not know that the word means lawyer." (Ibid.)

3. W. V. Schaefer, Federalism and State Criminal Procedure, 68 Harv.L.Rev. 1, 8 (1956).

In the instant case respondent contends that although it was appellant's right to have counsel appointed for him at state expense, he waived that right. Since this alleged waiver cannot rest on appellant's failure to request counsel coupled with his plea of guilty, Doughty v. Maxwell, supra, respondent's contention of waiver must rely on the testimony of prosecuting attorney Knowlton and justice of the peace Maynard, that they had informed appellant that an attorney could be appointed in the district court; on the trial court's questions, answered negatively by appellant, "Do you have an attorney * * *?", "Do you want an attorney?", and its further question, answered by an affirmative nod of appellant's head, "Do you understand your rights to have an attorney if you want one?"; and on appellant's history of prior felonies which, respondent urges, inferentially establishes appellant's knowledge of criminal procedure and the scope of his right to counsel.

In Johnson v. Zerbst, supra, the United States Supreme Court first comprehensively set down the standard of proof required to establish intelligent waiver of the right to counsel. The court noted that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights", 304 U.S. at 464, 58 S.Ct. at 1023, and declared that the "right * * invokes, of itself, the protection of a trial court" and:

"[t]his protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused * * * whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." 30 U.S. at 465, 58 S.Ct. at 1023.

While Johnson v. Zerbst concerned a federal prosecution, the court noted in Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), "We have held the principles declared in Johnson v. Zerbst

equally applicable to asserted waivers of the right to counsel in state criminal proceedings." 369 U.S. at 515, 82 S.Ct. at 890. See Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Doughty v. Maxwell, supra; Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Gideon v. Wainwright, supra, separate opinion of Mr. Justice Douglas, 372 U.S. at 345, 83 S.Ct. 792.

In Carnley v. Cochran, supra, the accused defended at trial without counsel and later alleged on habeas corpus that he had not been advised of his right to the assistance of counsel and had not waived that right. Reversing his conviction, the United States Supreme Court noted, "The record does not show that the trial judge offered and the petitioner declined counsel." 369 U.S. 513, 82 S.Ct. 888. The court then noted that the Florida State Supreme Court, which found a waiver, may have decided:

"from the very fact that no counsel was present, it would be assumed that the trial judge made an offer of counsel which the petitioner declined (or that the trial judge was justified in believing that the accused knew perfectly well of his right to counsel, and that it was unnecessary to make an explicit offer and to secure the accused's rejection of the offer). Or, it [the state Supreme Court] may have meant that it would assume simply that petitioner knew of his right to counsel and was willing to forego it * * *." Id. at 514, 82 S.Ct. at 889.

Analysing these "presumptions" the court found that it was:

"[no] answer to say that he [the defendant] may counter such presumptions on collateral attack by showing—if he can— that he had not in fact agreed, or been willing, to be tried without counsel. To cast such a burden on the accused is wholly at war with the standard of proof of waiver of the right to counsel which we laid down in Johnson v. Zerbst, 304

U.S. 458, 464–465, 58 S.Ct. 1019, 82 L.Ed. 1461 [146 A.L.R. 357]." (Ibid.)

The court, speaking to the burden of proof, distinguished Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957):

"In *Moore*, the record showed clearly that the petitioner had expressly declined an offer of counsel by the trial judge, and we held that the accused had to show by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to amount to an effective waiver. But no burden can be imposed upon an accused unless the record—or a hearing, where required—reveals his affirmative acquiescence." Id. at 516–517, 82 S.Ct. at 890.

The court also stated:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Id. at 516, 82 S.Ct. at 890.

▮▮ In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), the court discussed an indigent's right to counsel during police interrogation and his concomitant right to be properly advised of its scope. The court said the accused must be "[warned] that if he is indigent a lawyer will be appointed to represent him," and that "only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." 86 S.Ct. at 1627. The court regards this express warning as an indispensible safeguard of the right,

"this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of

this right." 86 S.Ct. 1626, (see also 86 S.Ct. at 1630).

While not controlling, the statements from Miranda quoted above are persuasive indications of the standard of procedural safeguards required by the Sixth Amendment.

The statement of facts at the beginning of this opinion relates that prosecuting attorney Knowlton testified at the habeas corpus proceeding below that he had informed appellant "that when he got into district court, an attorney could be appointed." Justice of the Peace Maynard testified that at the time appellant appeared before him the preliminary arraignment procedure included the statement that, while such was not the case in justice court, if the accused was indigent but desired an attorney one would be appointed in the district court. The trial court found that appellant, by his own admission, had been convicted of nine felonies. Respondent introduced the letter in which appellant states his preference for Idaho imprisonment over return to California and Folsom Prison. Respondent argues that all these facts, considered with the finding of the trial court below, that appellant, at arraignment in the trial court was "aware of his right to appointed counsel, but intelligently waived the same," established that appellant knew the trial judge's duty to appoint him court compensated counsel and that the judge discharged his duty when he "afforded [appellant] the opportunity to respond to his inquiry as to whether he knew his rights and wanted counsel. Respondent also contends that appellant must carry the "burden of proof" to establish infringement of his constitutionally protected right to counsel, and argues that the findings of the trial court, if supported by substantial though conflicting evidence, are binding upon this court.

Appellant argues that he never was told and did not know, before and during arraignment, that the district court was charged with the duty to appoint him counsel at public expense if he be indigent. Appellant's testimony regarding his attempt

to secure counsel at his own expense shortly before his arraignment supports this contention.

The facts of the instant case, and the inferences which respondent argues should be drawn from them, must be examined in light of "the standard of proof of waiver * * * laid down in Johnson v. Zerbst," Carnley v. Cochran, supra, which includes " 'every reasonable presumption against waiver of fundamental rights'," and Miranda's requirement that circumstantial evidence be held devoid of probative value regarding the issue of an accused's actual knowledge of the scope of his constitutionally guaranteed right to counsel.[4]

■ The record in the instant case does not satisfy the requirements of the federal standard of proof for waiver of the constitutional right to counsel. "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley v. Cochran, supra, 369 U.S. 516, 82 S.Ct. 890. Only the district judge had the power to appoint counsel for appellant; only he could tender a meaningful offer. Prose-

cuting attorney Knowlton could not offer court appointed counsel; thus, even discounting the interrogatory circumstances coloring his alleged advice and the manner in which such circumstances may have affected appellant's comprehension, Knowlton did not present an opportunity at which appellant could intelligently and understandingly reject court appointed counsel. See Commonwealth ex rel. Fairman v. Cavell, 423 Pa. 138, 222 A.2d 722 (1966) . The same holds true for the statements of justice of the peace Maynard, though disregarding that he admitted not remembering specifically informing appellant of his right to counsel in district court. Carnley v. Cochran, supra; cf. Davis v. Holman, 354 F.2d 773 (5 Cir. 1965) (separate offer required at each crucial stage).

■ Appellant's history of prior felonies cannot overcome the presumption against waiver of his right to counsel. Shawan v. Cox, 10 Cir., 350 F.2d 909 (1965). Hartman v. United States, 228 F. Supp. 402 (W.D.Va.1964), cited by respondent, concerns the prosecution of a defendant who on five previous trials defended with court appointed and compensated counsel. In the instant case it does not

4. In United States v. Plattner, 330 F.2d 271 (2 Cir. 1964), in a "restatement of the existing decisional law on the subject [of right to counsel and its waiver]," the court said:

"it is incumbent upon the presiding judge, by recorded colloquy with the defendant, to explain to the defendant: that he has the choice between defense by a lawyer and defense pro se; that, if he has no means to retain a lawyer of his own choice, the judge will assign a lawyer to defend him, without expense or obligation to him; that he will be given a reasonable time within which to make the choice; that it is advisable to have a lawyer, because of his special skill and training in the law and that the judge believes it is in the best interest of the defendant to have a lawyer, but that he may, if he elects to do so, waive his right to a lawyer and conduct and manage his defense himself. If the result is a waiver of the right to counsel and an election to defend pro se, the presiding judge should conduct some sort of inquiry bearing upon the defendant's capacity to make an intelligent choice. In

other words, there must be a record sufficient to establish to our satisfaction that the defendant 'knows what he is doing and his choice is made with eyes open'." (330 F.2d at 276).

The United States Court of Appeals for the Ninth Circuit recently stated:

It "is the holding in Johnson v. Zerbst, that the fact that a plea was intelligently entered and that counsel was intelligently waived must be ascertained at the time of arraignment or of waiver and not after the fact. When this is done the facts can be made to appear of record; the understanding of the defendant can actually be accomplished and its accomplishment demonstrated beyond dispute. When the ascertainment is subsequently made after disputes have arisen, a degree of uncertainty is bound to creep in since, in the resolution of disputed facts, problems of credibility and of reliability of memory cannot be avoided." Heiden v. United States, 353 F.2d 53, 55 (1965).

This far-reaching statement was referred to as "novel doctrine" in Rimanich v. United States, 5 Cir., 357 F.2d 537, 538 note 1.

appear that on any of appellant's previous prosecutions he was afforded or advised of his right to counsel. Only one prior conviction, in 1949, when appellant was eighteen years old, was in an Idaho court.

■ Finally, appellant's letter home in which he stated a preference for Idaho and fear of Folsom prison, and the testimony of prosecuting attorney Knowlton regarding this point, indicate, if anything, only that appellant was under strain and partially motivated by fear. "A rejection of federal constitutional rights motivated by fear cannot, * * * constitute an intelligent waiver." Moore v. State of Michigan, supra, 355 U.S. at 164, 78 S.Ct. at 197, 2 L.Ed.2d 167.

■ Regarding the burden of proof, unless the trial judge has offered an indigent accused the assistance of court compensated counsel, and "unless the record— or a hearing, where required—reveals his affirmative acquiescence," "no [evidentiary] burden can be imposed upon an accused." Carnley v. Cochran, supra, 369 U.S. 516–517, 82 S.Ct. 890, 82 L.Ed.2d 70. See Miranda v. State of Arizona, supra, 384 U.S. 436, 86 S.Ct. at 1627, 16 L.Ed.2d 694; cf. Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Wright v. Dickson, 336 F.2d 878 (9 Cir. 1964); Shawan v. Cox, 10 Cir., 350 F.2d 909 (1965). To the contrary, an appellate court must "'indulge every reasonable presumption against waiver'" of the constitutionally guaranteed right to counsel. Johnson v. Zerbst, supra. See Carnley v. Cochran, supra; cf. Miranda v. State of Arizona, supra.

■ ■Regarding the scope of review, findings of a state court on habeas corpus which are dispositive of a claim regarding infringement of a federal constitutional right must be "fairly supported by the record as a whole," otherwise "a federal court must grant an evidentiary hearing to a habeas applicant" de novo once he has

exhausted his state remedies. Townsend v. Sain, supra. Federal habeas corpus is available after the highest state court has ruled, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Jackson v. Maxwell, 262 F.Supp. 494, D.Idaho, 1966. Thus, the federal standard for appellate review of findings of fact which determine resolution of constitutional issues is applicable in the instant case. This review standard requires an "independent examination of the whole record." Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed. 2d 697 (1963). See Townsend v. Sain, supra, 372 U.S. at 316, 83 S.Ct. 745, 9 L.Ed. 2d 770; Moore v. State of Michigan, supra, 355 U.S. at 161, 78 S.Ct. 191, 2 L.Ed.2d 167.

Had an attorney been appointed for appellant, his services might have been invaluable. The complaint and information charged appellant with "injur[ing] a public jail, to-wit: Nez Perce County Jail, in the Courthouse, Lewiston, Idaho." Other than this, not a single factual element was contained in the charging clause, no less "A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." I.C. § 19–1409. See I.C. §§ 19–1411 and 19–1418(6) and 19–1418(7). The defects of the information become especially noteworthy when one considers that although the crime charged reaches only a person who "breaks down, pulls down or otherwise destroys or injures" a jail, I.C. § 18–7018, appellant claims his only misconduct was to rip up his mattress, while the prosecuting attorney referred, during the habeas corpus hearing, to a broken toilet. Whether either item of damage would constitute a violation of I.C. § 18–7018, raises a question of law. Of course that question will not be resolved here, but attention is focused upon it to illustrate appellant's need for an attorney's assistance in this case.

Judgment of conviction is reversed. The district court shall order the petitioner re-

turned to Nez Perce County for further proceedings consonant with this opinion.

TAYLOR, C. J., and SMITH and Mc-FADDEN, JJ., concur.

SPEAR, Justice.

I dissent.

While I agree with the majority opinion that the constitutional and statutory provisions together with the state and federal decisions cited therein require a trial judge in Idaho to inform any defendant charged with a felony violation of his right to counsel before being arraigned and to assign counsel to defend such defendant when he desires to have counsel and arrange for payment of the attorney's fees at the expense of the county; and while I also agree that in most cases it would be well for any trial judge to take an additional ten or fifteen minutes to interrogate a defendant in open court thus making a record of the efforts of the trial judge to fully inform the defendant of the seriousness of the crime with which he is charged to ascertain, if possible, the extent of the defendant's intelligence and his ability to understand the gravity of his situation and his right to counsel at every stage of the proceeding; nevertheless under the circumstances of this particular case I feel the interrogation by the trial judge presiding over the arraignment, acceptance of defendant's plea and subsequent sentencing of him was sufficient.

The petitioner in this habeas corpus proceeding was no eighteen-year-old youth who was standing before a district judge for the first time upon his first brush with the law. Instead we have here a man who, by his own admissions, has spent about twenty of his thirty-five years of life in penitentiaries, having been convicted of at least nine felonies. If there ever were one, this is an example of the professional criminal standing before a trial judge, willingly pleading guilty of another felony and urging the authorities to send him to the prison in Idaho rather than returning

him to the prison in the State of California where he feared for his life at the hands of fellow convicts.

The extent of the interrogation of a defendant by a trial judge necessarily must vary with the circumstances of each individual defendant. I cannot subscribe to a rule requiring an Idaho trial judge to waste the time of the court, the attaches thereof, and the defendant himself, by indulging in an interrogation of one who understands his constitutional right to counsel and, nevertheless, wishes to waive such right. There is respectable authority sustaining my opinion in this regard: State v. Lawrence, 70 Idaho 422, 220 P.2d 380; Proffer v. United States, 288 F.2d 182 (5th Cir., 1961); O'Keith v. Johnston, 129 F.2d 889 (9th Cir., 1942); Huffman v. Beto, 260 F.Supp. 63 (S.D.Texas 1966); United States v. Redfield, 197 F.Supp. 559 (D.C.Nev., 1961); Williams v. Swope, 186 F.2d 897 (9th Cir., 1951); Commonwealth v. Maroney, 228 A.2d 1 (Pa.Super.Ct.1967).

To carry the reasoning of the majority opinion to its ultimate conclusion, if Louis Nizer, the famous New York attorney, or if J. W. (Jake) Ehrlich, the outstanding criminal attorney of San Francisco, California, were defendants in a felony proceeding, the district judge would be required to interrogate them extensively to ascertain whether or not they understood their rights under the United States and Idaho Constitutions and if they were intelligent enough to properly waive the right of counsel, in face of the fact known to every judge in this state that either one of such attorneys are as knowledgeable, if not more, concerning these rights and the effect of a waiver thereof than any judge in the State of Idaho. Such conclusion is obviously erroneous. It would result in the trial judge performing an entirely and completely useless act. This our courts have never required. O'Keith v. Johnson, supra; Proffer v. United States, supra.

The majority opinion would have us blindly and literally apply the principles laid down in Johnson v. Zerbst, 304 U.S.

458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357, and Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, namely, "courts indulge every reasonable presumption against waiver of fundamental constitutional rights" and "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." An enlightened discussion of these principles is contained in In re Woods, 64 Cal.2d 3, 48 Cal.Rptr. 689, 409 P.2d 913 (1966), in which, among other things, the court points out:

"It is clear, however, that the matter of waiver of constitutional rights is to be determined on the *facts* of each particular case (In re Johnson, supra, 62 Cal.2d 325, 335, 42 Cal.Rptr. 228, 398 P.2d 420), and that an inflexible exclusive adherence to the strict record is neither constitutionally required nor in the best interests of effective judicial administration. * * *

"In Rice v. Olson, 324 U.S. 786, 65 S. Ct. 989, 89 L.Ed. 1367, it was held that, although the Fourteenth Amendment would not permit a presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, a fact issue as to whether an effective waiver had occurred was raised by his plea of guilty. There petitioner's denial of waiver by word or act was controverted by the state's allegation of waiver, and a hearing was ordered. Carnley v. Cochran, supra, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed. 2d 70, explicitly approved the Rice rationale, but held that a hearing was not required in that case because the state did not allege that there had been an affirmative waiver. (Carnley v. Cochran, supra, 369 U.S. 506, 516, 82 S.Ct. 884.) In the course of that decision the court uttered its well-known language to the effect that waiver will not be presumed from a silent record (Carnley v. Cochran, supra, 369 U.S. 506, 516, 82 S.Ct.

884), but it clearly did not hold that non-waiver will be presumed from a silent record. Thus, the clear position of the highest court is that the determination of waiver is not to be based wholly on the strict record of proceedings below, though a party who does not raise the fact issue by proper allegations may be bound by that record.

"Our conclusion on this question is reinforced by these words of Judge Kaufman in United States v. LaVallee which, though specifically directed to the U. S. District Courts relative to their examination of past state convictions, are peculiarly applicable to our inquiry herein: 'Gideon has changed a rule of law, but it has not abrogated the traditional responsibility of the District Courts accurately to determine the factual patterns upon which that law is to be applied. While issues of "fundamental fairness" have been removed from their consideration, the District Courts will now be confronted with factual determinations as to whether each appellant was, in fact, advised of his right to counsel, whether he waived that right, and if not, and if indigent, whether he was afforded court-appointed counsel. In resolving such questions, there is no reason to suppose that the Courts will not employ the methods and techniques which have long been familiar to our judicial system. Thus, they will undoubtedly consider the appellant's credibility; available court records; the prevailing practices of a particular state; any evidence which the State might choose to offer; and all other relevant considerations.' (United States v. LaVallee, supra, 330 F.2d 303, 313.)"

In addition to the many penitentiary terms served by the petitioner the last one of which was terminated only eighteen days before his conviction of petty larceny and incarceration in the county jail in Lewiston, Idaho, the record shows by testimony of the prosecuting attorney that,

"At the time I talked to Mr. Abercrombie I started first to give Mr. Abercrombie an explanation both as to what he was going to be charged with and as to what his rights were. I recall that when I got to the section of what Mr. Abercrombie's rights might be he said, 'I know all of that' but I went through it with Mr. Abercrombie. I explained to him what he is being charged with. I explained to him what the procedure was both on a charge and also as to what would take place in court. *I told Mr. Abercrombie that when he got into district court on this an attorney could be appointed.* He was not interested in having an attorney. I had a long conversation with him. As a matter of fact, I talked to Mr. Abercrombie two or three times after this first time." (emphasis supplied)

This conversation between the prosecuting attorney and the petitioner was had prior to petitioner's appearance in any court.

Additionally on cross-examination of the prosecutor by the attorney appointed for petitioner to represent him in a habeas corpus proceeding the record discloses the following:

"Q All right, I'll ask you did you tell Mr. Abercrombie that the charge lodged against him was a felony?

"A Yes, I did. He knew he was being sent to the penitentiary, Mr. Abercrombie, *I found to be well versed in the law.*" (emphasis supplied)

and also:

"Q Do you specifically recall having advised Mr. Abercrombie that he would have an attorney appointed for him in district court if he were unable to furnish an attorney himself?

"A Yes I do.

"Q When was this admonition or this advice?

"A This would have been the first time I talked with Mr. Abercrombie."

Furthermore, the record contains the testimony of the Justice of the Peace May-nard who at the time of the hearing had held such office for more than thirteen years in Nez Perce County, that the usual procedure when any case was brought before him on a criminal complaint was to advise him that,

"I explained then that in the district court he would be entitled to be represented by counsel, and in that court if he had no funds and he desired counsel one would be provided for him. That that was not the case in the justice court at that time."

It is true that Justice Maynard could not testify positively that he in fact did so advise the petitioner at the time of his first appearance and prior to waiving the preliminary hearing, but such customary procedure can be recognized in determinations of this kind. Madison v. Maxwell, 177 Ohio St. 84, 202 N.E.2d 617 (1964).

Under this record and all the circumstances as related herein I cannot hold that the trial judge was in error in failing to interrogate the petitioner any more than the record discloses he did. I am convinced, as was the sentencing trial judge and another learned trial judge who ruled against petitioner in the habeas corpus proceeding, that petitioner did know of his rights to have counsel appointed for him, and he intelligently and understandingly waived that right in the course of the following proceedings:

"The Court: Do you have an attorney?

"Mr. Abercrombie: No.

"The Court: Do you want an attorney?

"Mr. Abercrombie: No.

"The Court: *Do you understand your rights to have an attorney if you want one?*" (emphasis supplied)

"Mr. Abercrombie: (nodded affirmatively.)"

The order remanding the petitioner to the custody of the warden of the Idaho State Penitentiary and quashing petitioner's writ of habeas corpus should be affirmed.